# Real Estate Trust Company of Philadelphia, Appellant, v. Riter-Conley Manufacturing Company.

*Corporations—Bonds—Underwriting agreement—Conditional subscription—Evidence.*

1. Where on a bill in equity to enforce a written subscription to an underwriting agreement for the purchase of the bonds of a corporation, one of the defendants in his answer to the bill claims that his subscription was a conditional subscription by reason of a parol collateral agreement made at the time of his signature, and the answer is supported by the testimony of one uncontradicted witness, strongly corroborated, a finding by the trial judge that the subscription was in fact conditional will be sustained.

2. In such a case where it appears that the underwriting agreement was tripartite, the fact that one of the defendants' subscription was conditional does not defeat the defense of such defendant where it appears from the very terms of the contract that if such subscription fails, the other subscribers are all released from liability; nor in such a case can the assignee of the original seller of the bonds claim that he is entitled to recover, although his assignor was not. The assignee in such a case takes no better title than the assignor, and is bound to inquire of the subscribers if they had any defense to their subscription.

Argued Nov. 3, 1908. Appeal, No. 214, Oct. T., 1908, by plaintiff, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1904, No. 612, dismissing bill in equity in case of The Real Estate Trust Company of Philadelphia v. Riter-Conley Manufacturing Company, Water Works Construction Company, J. B. Sammel, Jennie K. Sammel, Administratrix of the Estate of James E. Sammel, deceased, et al. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity to enforce an underwriting agreement.

OVER, P. J., specially presiding, filed the following opinion:

The plaintiff, a Pennsylvania corporation, is the holder of two promissory notes aggregating $75,000, made by the Eastern Tube Company, an insolvent corporation, and holds as collateral therefor $150,000 bonds of said company, and an assignment of a one-half interest in an underwriting agreement for the pur-

chase of bonds signed by the defendants. The prayer of the bill is that an account be stated between the plaintiff and defendants, the amount due from each on the underwriting agreement be ascertained, and the amounts due decreed to be paid to the plaintiff.

### FINDINGS OF FACT.

1. The Eastern Tube Company, a corporation, issued bonds dated January 2, 1901, of the par value of $1,000,000, $750,000 of these being delivered to the Water Works Construction Company, a corporation, for constructing the plant of the tube company.

2. On November 30, 1901, all of the defendants to this bill except C. C. Corbett, James E. and J. B. Sammel, with others not defendants, signed an underwriting agreement with the tube company, each party agreeing to purchase and pay for at par on January 2, 1903, bonds to the amount specified, aggregating $250,000, being the amount of bonds in the treasury of the tube company, in case the same should not be sold by it in the meantime. It was also agreed that the contract could be assigned by the tube company as collateral security for loans to it. This agreement and the $250,000 bonds were pledged to the Mercantile Trust and Safe Deposit Company of Baltimore, to secure a loan made by it of $200,000 to the tube company.

3. On October 2, 1902, a supplemental agreement was made between the tube company and all the defendants, except C. C. Corbett, in which it was agreed that each of the subscribers, if the bonds were unsold on December 15, 1903, would then take up and pay for fifty per cent of the bonds unwritten by it. The original agreement was then in the possession of the Mercantile Trust and Safe Deposit Company of Baltimore, and it was not a party to the supplemental agreement.

4. The agreement on which the plaintiff claims was signed by all the defendants and the tube company, on October 8, 1902. It recites that the tube company has legally issued $1,000,000 of bonds; that: "It is now proposed to secure an underwriting of $300,000 of said bonds for the purpose of supplying the said company with additional working capital, and to retire certain of its outstanding obligations," and then provides in part as

follows: "Now the undersigned subscribers do hereby (each for himself and not for any of the others) agree with each other and separately with the tube company, to subscribe to such bonds to the extent set opposite our respective signatures hereto, and we agree to purchase the same and to pay therefor at par and accrued interest, at the time and in the manner and under the conditions hereinafter set forth: (1) This subscription shall become binding only when bonds equaling $300,000 par value shall have been subscribed for; (VII) the subscribers consent to the assignment of this contract by the tube company to any financial institution or institutions as collateral security for a loan of money not exceeding the amount of the par value of said bonds at any time before December 1, 1903, and in the event of such assignment, such financial institution or institutions shall be subrogated to all the rights of the tube company under and pursuant to this agreement." The aggregate subscription to the agreement is for $300,000 of bonds.

5. After this agreement was made Turner A. Beall, president of the tube company, gave William T. Tiers a note of the tube company, dated December 8, 1902, payable in six months, to his order, for $25,000, and received this amount for the company, less a commission of six per cent, and six months' interest on the note; and also assigned to him a one-sixth interest in the underwriting agreement. The money advanced on this note was obtained from the plaintiff, and the note and $50,000 of the tube company's bonds, and the agreement, delivered to it as collateral for the loan.

6. Beall also gave P. S. Dupont the tube company's note for $50,000, dated December 8, 1902, payable in six months to his order, and assigned to him a one-third interest in the underwriting agreement. Dupont paid the amount of this note, less six per cent commission and interest, to the Mercantile Trust and Safe Deposit Company of Baltimore on account of the note for $200,000 of the tube company held by it, and it surrendered $125,000 of the tube company's bonds pledged to it, and $100,000 were delivered to Dupont as collateral for the loan. He subsequently delivered the note, agreement and bonds to the plaintiff.

7. J. B. Sammel and James E. Sammel, two of the defendants, became parties to the original underwriting agreement of November 30, 1901, by assignment to each of them of $10,000 of the subscription thereto made by R. G. Gillespie and V. Q. Hickman, and both the Sammels signed the supplemental agreement thereto bearing date October 2, 1902, each for $10,000, which reduced the liability of the subscribers to one-half the amount specified in the original subscription.

8. When the agreement of October 8, 1902, being the agreement under which the plaintiff seeks to recover in this case, was presented to J. B. and James E. Sammel, and their signatures thereto requested and obtained by T. A. Beall for subscriptions of $14,000 each, it was represented to them by T. A. Beall, the president of the Eastern Tube Company and its agent for securing the subscriptions, that their subscriptions to the agreement would cancel the $10,000 subscriptions for which each was liable on the agreement of November 30, 1901, and that they should have the right, should they so desire, to be released from this agreement of October 8, 1902, upon the payment of the sum of $10,000 each as called for by the terms of the original subscription, instead of $14,000 each as called for by this agreement, and it was by reason of these representations so made by the said Beall that the Sammels signed the agreement of October 8, 1902.

9. The right of J. B. Sammel, to be released from the contract of October 8, 1902, was subsequently confirmed by the Eastern Tube Company in a letter signed by its president, and on December 21, 1902, J. B. Sammel paid the $10,000 as agreed upon, and received the share of the bonds coming to him under the terms of the agreement. At the time this $10,000 was paid by Sammel and the bonds delivered to him by the Eastern Tube Company, his liability to said company under the original contract of November 30, 1901, and its supplement, did not exceed the sum of $5,000.

10. James E. Sammel did not pay the $10,000 to take up his share of the bonds, as was done by his brother, but on October 14, 1902, he paid to the Eastern Tube Company the ten per cent of his subscription, amounting to $1,400, as called for by the

terms of the agreement of October 8, 1902, and received from the company its receipt for said sum signed by its treasurer, bearing the date of October 21, 1902, and containing the words: "In case the said agreement shall not be and become effective by the completion of the underwriting thereunder, such payment shall be returned with six per cent interest."

11. At the time the agreement of October 8, 1902, was presented to J. B. Sammel and James E. Sammel, and their signatures thereto obtained by T. A. Beall, the agreement of November 30, 1901, was pledged to and in the possession of the Mercantile Trust and Safe Deposit Company of Baltimore, as collateral security upon a loan for $200,000, made by said Mercantile Trust and Safe Deposit Company of Baltimore to the Eastern Tube Company, and the Sammels were not relieved from liability thereon by reason of the subscription under the agreement of October 8, 1902, and whilst J. B. Sammel has paid the amount of his subscription under said agreement, and may be relieved from liability thereon, James E. Sammel's estate has not been relieved.

12. The agreement of November 30, 1901, is still in the possession of the Mercantile Trust and Safe Deposit Company of Baltimore, and subsequently in November, 1904, a suit was brought thereon in the circuit court of the United States for the western district of Pennsylvania, by the Eastern Tube Company, for the use of the Mercantile Trust and Safe Deposit Company of Baltimore, at No. 54 of November Term, 1904, against Jennie K. Sammel, administratrix of the estate of James E. Sammel, deceased, to recover under said agreement, which suit is still pending and undisposed of in said court.

13. The agreement of October 8, 1902, contains the provision that: "This subscription shall become binding only when bonds equaling $300,000 par value shall have been subscribed for." Bona fide and binding subscriptions to an amount of more than $286,000 were never secured to this agreement.

14. Under all the circumstances, the signature of J. B. Sammel was obtained to the agreement of October 8, 1902, under such misrepresentations and inducements, as amounted to a fraud upon the said J. B. Sammel.

15. Under all the circumstances, the signature of James E. Sammel was obtained to the agreement of October 8, 1902, under such misrepresentations and inducements, as amounted to a fraud upon the said James E. Sammel.

### DISCUSSION.

The only dispute as to the material facts of this case is in reference to the parol agreement and representations made to the Sammels when they signed the agreement upon which suit is brought. James E. Sammel died prior to the filing of the bill and his testimony was not available; J. B. Sammel, however, in his answer, avers the facts to be substantially as heretofore found, and his testimony supports the answer. It is corroborated as to his subscription being conditional, by the fact that he paid the tube company on December 21, 1902, $10,000, receiving that amount in bonds, being the amount he was liable for under the agreement of November 30, 1901, by reason of the assignment to him by Gillespie and Hickman of $10,000 of their subscription to that agreement. It was not necessary to take up these bonds under the agreement until January 2, 1903; but he evidently paid for them on December 21, 1902, in compliance with Beall's request made in a letter of October 18, 1902, in which he recognizes Sammel's right to cancel his underwriting under the agreement of October 8, 1902, by taking up and paying for bonds to the amount of $10,000, which strongly corroborates Sammel's testimony, and in addition to this, it is not contradicted by Beall. We thus have the testimony of one uncontradicted witness, strongly corroborated, which is sufficient to support the findings of fact as to his subscription being conditional, and move a chancellor to reform or set aside the agreement. The only corroboration of J. B. Sammel's evidence that Beall represented to his brother and himself that their subscriptions under the agreement of November 30, 1901, would be canceled by the subscriptions under the agreement of October 8, 1902, is the inference from the facts of the case that the latter agreement was to supersede the former.

It is contended by counsel for plaintiff that as the underwriting agreement is tripartite, the fact that Sammel's subscription

was conditional, is not a good defense. The cases cited on this question arise from subscriptions for stocks of corporations.

Mr. Justice GREEN in Phila. & Delaware County R. R. Co. v. Conway, 177 Pa. 364, in discussing the question says: "If he (a subscriber to stock of a corporation) is to be released from his subscription because of a secret parol agreement made with the agent who procured the subscription and which is not expressed in the written contract signed by all, it would be clear fraud upon the others, and therefore under the decision in Miller v. Railroad, he is estopped from setting up such an agreement." A number of cases on the subject are cited in this opinion, and it appears from all that the reason for the rule is, that it would be a fraud upon the other subscribers for stock to permit one to set up a secret agreement by which he would be relieved from liability, whilst they would not. This reason does not apply here, as if Sammel is not bound by his subscription, $300,000 of bonds were not subscribed for, and all the defendants are released from liability, on the agreement. It would certainly be inequitable under the facts of this case to hold Sammel liable, and as he can be relieved from liability without injury to his cosubscribers, there does not seem to be any reason why the rules of law governing ordinary agreements should not apply to this case.

Caley v. Phila. & Chester County Railroad Company, 80 Pa. 363, we think, rules this case for the defendants. There Mr. Justice GORDON says: "Where one subscribes to the stock of a public corporation prior to the procurement of its charter, such subscription is to be regarded as absolute and unqualified, and any condition attached thereto is void: Bedford Railroad Company v. Bowser, 48 Pa. 29. The reason for this rule is obvious: the commissioners who are appointed to receive such subscriptions, are not the accredited agents of the corporation, for it is not yet in being, but are rather the agents of the public, acting under limited and definite powers, which everyone is bound to know, and if he be misled by representations which such agents have no right to make, it is his own folly. Any other rule would lead to the procurement from the common-

wealth of valuable charters without any absolute capital for their support, and thus give rise to a system of speculation and fraud which would be intolerable. When, however, the company is once organized, a different order prevails. Such a company may receive conditional subscriptions for its stock, and, when it does so do, it is bound to the performance of the conditions therein contained: Railroad Co. v. Stewart, 41 Pa. 54; Railroad Co. v. Hickman, 28 Pa. 318. . . . Nothing is better settled in this state than that not only can the ambiguities of a written instrument be explained by parol, but it may, in the same manner, be varied, added to, or even contradicted where it is shown that but for the oral stipulations, made at the time, the party affected would not have executed it. The authorities for, as well as the reasons given in support of this doctrine so abound in our books, that to cite the former, or to restate the latter, would be but a waste of time. But it is said this corporation was not bound by the declarations of its agent, they having exceeded their authority, and hence it was under no legal obligation to fulfill their undertakings. Grant this to be so, but how, then, can it hold the defendant to his part of the covenant? This plea would answer an excellent purpose were Caley seeking to enforce the contract against the company, but it so happens that the stick is in the other hand. 'If one party be not bound neither is the other:' Strong, J., in the case of Railroad Co. v. Stewart, 41 Pa. 54. In this respect a corporation differs nothing from a natural person; if it would enforce the contracts of its agents, it must first agree to adopt and be bound by them."

This case is cited and approved in a number of subsequent cases.

Under the law and facts of this case it seems clear that the Eastern Tube Company could not enforce the agreement against J. B. Sammel; but it is contended that the plaintiff, as assignee of the agreement, is in a better position than the tube company, because it accepted the agreement as collateral for money loaned, without notice that J. B. Sammel's subscription was conditioned. The plaintiff, however, as assignee, took no better title than its assignor, and subject to all defenses which could be made against the tube company by the subscribers: 3 Page on

Contracts, sec. 1269. To protect itself, it was bound to inquire of the subscribers if they had any defense to their subscription, and had it done so in this case of J. B. Sammel's it would have discovered that his subscription was conditional; that it had been canceled, and that the agreement was not binding on any of the subscribers, because the subscriptions for bonds did not amount to $300,000, as provided in the agreement.

### CONCLUSIONS OF LAW.

1. The Eastern Tube Company is bound by the representations of its president and agent, T. A. Beall, made at the time the signatures of J. B. Sammel and James E. Sammel were secured by him to the underwriting agreement of October 8, 1902, if it undertakes to avail itself of the benefits of said agreement, and it cannot enforce the agreement against them except subject to and upon the conditions and representations made with reference thereto by said agent, whether said agent, in making said representations, exceeded his authority or not.

2. The plaintiff took the agreement of October 8, 1902, by assignment, and subject to all the equities and defenses existing thereto in the hands of the Eastern Tube Company, and took no other or greater rights therein or thereunder, than those possessed by the Eastern Tube Company at the date of the assignment.

3. As the subscription of J. B. Sammel for bonds under the agreement of October 8, 1902, was conditional, and he had the right to and did cancel it, $300,000 of bonds were not subscribed for as provided in said agreement, so that none of the defendants are liable under the agreement, and the bill must therefore be dismissed at plaintiff's costs.

*Error assigned* was decree dismissing the bill.

*H. B. Gill,* with him *Shiras & Dickey, John R. Read, Silas W. Pettit* and *Louis B. Runk,* for appellant.

*A. Leo Weil,* with him *Charles M. Thorp, H. D. Montgomery* and *J. Rodgers McCreery,* for appellees.

PER CURIAM, January 4, 1909:

The decree is affirmed at the cost of the appellant on the findings of fact and the conclusions of law by Judge OVER, specially presiding.