Jackson, Appellant, *v.* Clemson.

40

Argued April 27, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*James M. Graham,* and with him *A. E. and S. A. Sisson,* for appellants.

*George B. Berger,* for appellee.

OPINION BY LINN, J., July 8, 1931:

Plaintiffs sued for $5,000 on a written contract whereby they agreed to sell to the defendant—one of a syndicate—an undivided one-fiftieth interest in a block of 2,121,396 shares of the capital stock of Rand Consolidated Mines, Limited. The contract was dated March 14, 1922. Defendant was one of a number of purchasers who signed, and agreed to pay severally, and not jointly, sums set opposite their names, part of the total consideration, $250,000. The amount subscribed by each was payable within five years from date, "with interest at 6% per annum, payable semiannually on all sums unpaid." The contract provided that it should be "valid only when responsible parties subscribed the entire sum of $250,000." No question is raised about the form of this action.

The defense was that the contract never became effective because responsible parties had not subscribed $250,000 as required, but that, on the contrary, $75,000 of the subscription was made by persons, referred to in the evidence as the 'Indianapolis group,' whose subscription was conditional; that these subscribers were not absolute purchasers; that their signatures were obtained by the assistance of plaintiffs, who, to induce the same, in June 1922, made an agreement in writing with them, agreeing, that after the first interest payment was made, and before the last was due, these particular subscribers, or any of them, could transfer their interests in the contract to the plaintiffs and be themselves released therefrom. In addition, defendant averred and proved that, as soon as he learned of this 'side' agreement, he rescinded his contract and demanded back the amounts he had paid as interest, not having yet paid any part of the $5,000. He counterclaimed for the interest payments made.

The court sustained the defense, and directed the jury to find a verdict for the defendant against the

plaintiffs in the amount of the interest payments; judgment was entered on the verdict, and this appeal followed.

There is nothing to indicate what proportion of all the stock of the corporation is represented by the block that plaintiffs proposed to sell. It is, however, entirely clear, that plaintiffs agreed with defendant to sell the entire lot to the purchasers, each purchaser agreeing to take an undivided interest, determined by the sum specified by him opposite his signature, and that, as to all the subscribing purchasers, it was a term in the contract, that there should be no liability unless 'responsible' parties subscribed $250,000 for the lot; that, of course, meant absolute and not conditional obligations to purchase. The members of the 'Indianapolis group,' in consequence of the 'side' agreement made with the plaintiffs, were not bound to purchase, because they, or any of them might turn their subscriptions over to plaintiffs under the 'side' agreement before the time for payment. There was, therefore, not a bonafide purchase and sale of all the stock as was contemplated; as the conditional character of the subscription was produced by the plaintiffs, and was contrary to what had been proposed by them to and accept by defendant, their conduct furnished ground for rescission by him.

It may be observed that this is not the case of an agreement for the absolute sale of shares of stock to various purchasers, with a 'side' agreement, providing that after the contract had been performed, the seller would purchase back stock sold and delivered to some of the purchasers: (cf. Morgan v. Struthers, 131 U. S. 246; Meyer v. Blair 109 N. Y. 600). Here the parties, for specified purposes, dealt with the block of stock as a whole, and not with part of it. Their purpose probably, was to sell the stock at an advance, and pay for it during the five years, from time to time, as sales

were made, dividing the profit in the proportions of their subscriptions.

The agreement contains this provision: "All the stock of the parties of the first part, sold as contemplated by this agreement, shall be delivered in trust, with the said trustees, [though there is nothing to indicate that this was accepted by the trustees] who shall deposit same with the Peoples Bank of Buffalo and shall be surrendered to the parties entitled thereto upon the completion of the terms hereof, provided, however, that from time to time the syndicate shall by vote of a majority in interest, in writing, have the right to withdraw any portion of said stock for the purpose of selling the same, paying from the proceeds thereof to the parties of the first part, their proportionate share of the syndicate purchase price, until the said purchase price shall be fully paid with interest as aforesaid. The parties hereto hereby severally agree that for a period of three years they will not offer for sale any of said syndicate stock at a price less than Treasury stock of the Rand Consolidated Mines, Limited is offered."

The word 'syndicate' is a business and not a legal term; it describes an association of persons formed to carry out some particular business transaction, ordinarily of financial character, in which the members are mutually interested: Hambleton v. Rhind, 84 Md. 456; 36 Atlantic 597; Gates v. Megargel, 266 Fed. 811. By this contract the subscribers were co-adventurers; Jones v. Kinney, 146 Wis. 130, 131 N. W. 339; "Where several persons, by common agreement, join as buyers of property, each to acquire a fractional, undivided interest therein, proportionate to the amount paid in by him, they owe to one another in such enterprise the duty of good faith and full and fair disclosure, and neither one can, by secret commission or rebate, obtain any advantage over his co-adventurers. The consent of

each, is usually given, and the money of each obtained, upon the understanding and belief that the funds, interest, and aid of each is and will be given to the enterprise, within the bounds agreed upon. For one, by secret treaty with the seller, to obtain a commission or rebate is a fraud upon his fellow buyers'' (citing cases): Jones v. Kinney, supra.

The evidence is that the plaintiffs executed a number of originals of the contract, and delivered them, to the end that subscribers, as purchasers and members of the syndicate, might be obtained. A few days before the expiration of the 60 day period allowed for obtaining the subscriptions, the plaintiffs made the 'side' agreement with the 'Indianapolis group.' One of the subscribers for a $5,000 interest was Frank L. Danforth. Allen W. Jackson, a plaintiff, testified that Danforth brought to plaintiffs the agreement of June 9, 1922, with the 'Indianapolis group,' and that plaintiffs executed it. Danforth's failure to inform his co-subscribers of this material change, of the subscription contract which they had executed, was a breach of faith to all who, like defendant, remained uninformed. When the plaintiffs passed out the papers for signature, they made an offer to prospective subscribers to come in on the basis of the terms stated. If $250,000 had been responsibly subscribed, that offer would have been accepted in the terms in which it was made, and the subscribers would have been bound. But these plaintiffs, without the knowledge of some of the purchasers, took from the 'Indianapolis group' a conditional acceptance of their offer to the others; the plaintiffs made a contract with that group, essentially different from that proposed to be made with the other subscribers who remained ignorant of the 'side' agreement. Such conduct on the part of the plaintiffs relieved the defendant because they never assented to the same thing: Real Estate Trust Company v. Riter-Conley Company,

223 Pa. 350; Bank v. Hall, 101 U. S. 43, 50. Joint adventurers in such a transaction must act with each other in the utmost good faith. Neither plaintiffs, nor the 'Indianapolis group,' who knew the terms of the contract dated March 14, 1922, observed the required good faith with defendant and the other subscribers who were ignorant of the 'side' agreement, and their conduct prevents recovery: Sim v. Edenborn 242 U. S. 131; 15 R. C. L. 501 etc., Menefee v. Oxnam (Cal.) 183 Pacific 379; Sickelsteel v. Edmonds 158 Wis. 122, 147 N. W. 1024; Erlanger v. Sombrero Phosphate Co. L. R. 3 A. C. 1218; Jones v. Kinney, supra, Gates v. Megargel, supra, Real Estate Trust Company v. Riter-Conley Company, supra.

Appellants' brief contains a suggestion that defendant cannot rescind without restoring the stock to them; but the defendant never got any stock; further than that, we cannot inquire in this action.

Judgment affirmed.